IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CLAUDIA SONNEN )
         Plaintiff, )
)    Civil No. 03-797-AS
   v. )
)    OPINION AND ORDER
AMERUS LIFE INSURANCE )
COMPANY, )
         Defendant. )
)

ASHMANSKAS, Magistrate Judge:

Plaintiff Claudia Sonnen has filed a complaint against defendant AmerUs Life Insurance Company ("AmerUs") alleging breach of contract for failure to pay life insurance benefits upon the death of her husband, Patrick Sonnen. Currently before the court are the parties' cross-motions for summary judgment (docket Nos. 43 and 48).

## BACKGROUND

While plaintiff maintains that she is entitled to the proceeds of a life insurance policy insuring her husband, defendant maintains that she is not on the following grounds: (1) no insurance contract was formed because no agreement was reached on material terms; (2) no binding contract of insurance was formed because of failure of conditions precedent to obtaining coverage; and (3) plaintiff is precluded from recovering under the policy due to one or more material misrepresentations, omissions, concealments of fact, and incorrect statements in the applications submitted.

Page -1- OPINION AND ORDER         *{ khh }*

## SUMMARY JUDGMENT STANDARD

A party is entitled to summary judgment as a matter of law if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c); *Bahn v. NME Hosp's, Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991). The moving party must show an absence of an issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party shows the absence of an issue of material fact, the non-moving party must go beyond the pleadings and designate specific facts showing a genuine issue for trial. Id. at 324. A scintilla of evidence, or evidence that is merely colorable or not significantly probative, does not present a genuine issue of material fact. United Steelworkers of America v. Phelps Dodge Corp., 865 F.2d 1539, 1542 (9th Cir.), cert. denied, 493 U.S. 809 (1989).

The substantive law governing a claim or defense determines whether a fact is material. T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.1987). The Ninth Circuit, however, has stated, "[n]o longer can it be argued that any disagreement about a material issue of fact precludes the use of summary judgment." California Architectural Bldg. Prods., Inc. v. Franciscan Ceramics Inc., 818 F.2d 1466, 1468 (9th Cir.1987), cert. denied, 484 U.S. 1006 (1988), citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986).

## FACTS

Mr. Sonnen died of colon cancer on October 15, 2002. He had applied for a $1,000,000 life insurance policy with AmerUs in July 2002. The dispute between the parties concerns when and if a binding contract of insurance arose, which depends in part on: (1) what the Sonnens knew about Mr. Sonnen's health and when did they know it; and (2) what they communicated to AmerUs about his health and when did they communicate it.

A. Mr. Sonnen's Pre-Application Medical History

In August 2001 and February 2002, Mr. Sonnen complained of abdominal pain to his doctor, Dr. Magsarili, a general practitioner. Defendant's Concise Statement of Material Facts ("Defendant's Facts"), ¶ 1; Plaintiff's Response to Defendant's Concise Statement of

Material Facts ("Plaintiff's Response Facts"), ¶ 1; Pierson Dec.[1], Ex. A, pp. 1-4. An ultrasound of March 12, 2002, was normal, but on March 13, 2002, Mr. Sonnen reported that he was still having abdominal pain. He was instructed to call Dr. Magsarili if the pain did not subside in a couple of weeks. Pierson Dec., Ex. A, p. 6.

B. <u>The Insurance Application</u>

In June 2002, agent Doug Perry approached Patrick Sonnen about purchasing an AmerUs life insurance policy. Plaintiff's Concise Statement of Material Fact ("Plaintiff's Facts"), ¶ 1; Defendant's Response to Plaintiff's Concise Statement of Material Fact ("Defendant's Response Facts"), ¶ 1. On July 1, 2002, Mr. Sonnen signed an AmerUs Application for Life Insurance (the "Application") seeking $1 million in coverage. Mr. Sonnen signed as the proposed insured and for P& C Investments, LLC, identified as the policy owner and beneficiary. Defendant's Facts, ¶ 3; Plaintiff's Response Facts, ¶ 3. The parties disagree about the extent to which Mr. Sonnen discussed his abdominal problems with Mr. Perry on July 1, 2002, in conjunction with the preparation of the Application. Plaintiff offers her affidavit in which she testifies that she and Mr. Sonnen told Mr. Perry that Mr. Sonnen had been having abdominal pain, which they believed was "just gas" and that he had had a normal abdominal ultrasound. Sonnen Response Aff., ¶ 4. Defendant offers the declaration of Mr. Perry in which he states that he was told that Mr. Sonnen had had abdominal pain six months ago, that test results were normal and that it had not recurred. Perry Dec., ¶ 5.

The following are from the Application itself:

(1) In response to question 10.b., "When did you last consult a doctor and why?", the application states, "6 mo. ago stomach pain—ran tests, nothing found, No trouble since." Pierson Dec., Ex. D, p. 7.

(2) The Answer "No" is checked in response to question 12.e., "Within the last ten

---

[1] "Pierson Dec." refers to the Declaration of Michael Pierson signed on May 27, 2004, and filed in support of defendant's motion for summary judgment.

| | |
|---|---|
| 1 | years, have you ever had or have symptoms of or been treated for . . . disorder |
| 2 | of the stomach, liver, gallbladder, pancreas or digestive tract, including colitis |
| 3 | or ulcers?" Id., p. 8. |

Mr. Perry stated that he filled out the medical portion of the application—questions ten to thirteen—in the Sonnen's presence and did not ask Mr. Sonnen to sign the application until he had reviewed those questions with him. Perry Dec., ¶ 6.

The Application's "Agreements and Representations" section states that the answers and statements in the Application and any supplements were complete and true, that no changes would be made unless the owner agreed in writing, and that the Application and any supplements would be part of the policy. Id. The "Agreements and Representations" further stated:

> "the policy will take effect and coverage begin on the issue date specified in the policy if the full first premium is paid, the Proposed Insured(s) are living, and the answers and statements in the application(s) continue to be complete and true at the time of delivery of the policy."

Id. Citing the declaration of Ruth Doxon, plaintiff asserts that AmerUs requires delivery of policies to the proposed insureds. Defendant's Facts, ¶ 4. Ms. Doxon was previously the director of the New Business Department at AmerUs, and consequently, she is familiar with new business procedures. She states that:

> "AmerUs requires physical delivery to the insured or proposed insured of the policies it issues. In keeping with that delivery requirement AmerUs requires in its standard application form, including the one approved for the State of Oregon (Form 13514 8/98 OR) and used in this case, that the 'answers and statements in the application(s) continue to be complete and true at the time of delivery of the policy.'"

Doxon Dec., ¶ 3.

Citing the cover page to the Application, plaintiff argues that delivery is not necessary for the policy to become effective. Plaintiff's Facts, ¶ 4. That cover page states, "This policy will take effect on the policy date stated," which is specified as July 28, 2002. Dawson

Page -4- OPINION AND ORDER *{ khh }*

Response Aff.,[2] Ex. 13, p. 1. Mr. Perry stated that he believed the Sonnens were aware that delivery was required for the policy to be effective based on prior policies he had secured for them. Perry Dec., ¶ 3. Mr. Perry never specifically showed the Sonnens the section of the Application entitled Agreements and Representations. Plaintiff's Response Facts, ¶ 26; Defendant's Reply Facts, ¶ 26.

Mr. Perry submitted the Application to AmerUs, and on July 9, 2002, P&C issued a check to AmerUs for $20,000. Defendant's Facts, ¶ 7; Plaintiff's Response Facts, ¶ 7.

C. <u>Mr. Sonnen's July 3, 2002, Medical Appointment</u>

There appears to be no dispute that the Sonnens did not tell Mr. Perry that Mr. Sonnen had an appointment with Dr. Magsarili the day after he signed the Application, on July 2, 2002. Plaintiff maintains that the appointment was scheduled in response to a letter of June 5, 2002, from Dr. Magsarili's office that Mr. Sonnen was due for some tests warranted by high cholesterol. Dawson Response Aff., Ex. 2, p. 8.

During the appointment, Mr. Sonnen reported: (1) that his abdominal pain, which began in August 2001, was continuing; (2) that he stopped taking cholesterol medication three weeks before and had since been able to sleep; (3) that he has sudden sharp pains in different areas of the stomach, usually the upper abdomen, but can be down in the groin area; (4) that he has more gas than usual plus nausea, diarrhea and stomach cramps. Pierson Dec., Ex. 1, p. 7. Dr. Magsarili prescribed Protonix and referred Mr. Sonnen to a gastroenterologist, Dr. Wollmuth. <u>Id.</u>, p. 8. There is no indication in the medical records that any tests related to high cholesterol were performed at the July 2, 2002, visit to Dr. Magsarili.

AmerUs was informed of the July 2, 2002, doctor visit during a July 7, 2002, telephone interview in which it was reported that Mr. Sonnen saw the doctor for a "stomach ache" which was "resolved, no residual." Dawson Response Aff., Ex. 8.

---

[2] "Dawson Response Aff." refers to the Affidavit of Bryan W. Dawson signed on June 14, 2004, and filed in support of plaintiff's response to defendant's motion for summary judgment.

Page -5- OPINION AND ORDER  *{ khh }*

D. The July 16, 2002, Medical Application and Call to Dr. Magsarili

Mr. Sonnen's stomach problems persisted. On July 16, 2002, he called Dr. Magsarili's office and reported that his July 2 prescription had not helped. Dr. Magsarili prescribed new medication, and Mr. Sonnen was reminded to follow up with the gastroenterologost. Defendant's Facts, ¶ 8. Plaintiff maintains that Mr. Sonnen was advised to see the specialist only if the new prescription was not helpful, but that is not reflected in the medical records or deposition excerpts relied on by defendant. Plaintiff's Response Facts, ¶ 8. Nonetheless, defendant maintains that the fact that he was on Protonix, that it did not work and that he had been referred to a gastroenterologist would have been material to its decision to insure Mr. Sonnen. Cunningham Dec., ¶ 7. That appears to be the case regardless of whether Mr. Sonnen would have characterized the pain as related to excess gas.[3]

The same day that he called Dr. Magsarili, July 16, 2002, Mr. Sonnen underwent an AmerUs paramedical examination and signed an Application for Insurance Medical Examination ("Medical Application"). Defendant's Facts, ¶ 9; Plaintiff's Response Facts, ¶ 9. The Medical Application records the following:

- (1) In response to "When did you last consult a doctor and why?", the answer is "1/02 [check] cholesterol et EKG";
- (2) In response to "Are you now under observation or treatment?" the answer "no" is checked;
- (3) In response to "What medications are you now taking?" the answer is "Lipitor, 10 mg";
- (4) In response to "Have you ever had. . .(e) colitis, diverticulitis, ulcer, gall bladder, liver, stomach, intestinal or rectal disease or disorder?" the answer "no" is checked; and
- (5) In response to "Within the last five years, other than as reported in sections 1 -

---

[3] Mr. Sonnen and other members of his family had a lifelong history of excessive gas. Plaintiff's Response Facts, ¶ 24.

3, have you seen a doctor, counselor, therapist or had any illness, injury, surgery, diagnostic test or treatment or been advised to have any diagnostic test, surgery or treatment not yet completed?" the answer "no" is checked.

Pierson Dec., Ex. D, p. 10-11. Mr. Sonnen signed the Medical Application representing that "the answers and statements on the application are complete and true and correctly recorded" and acknowledging that "a copy of this application shall be a part of the policy." Id. at p. 11. Plaintiff maintains that Mr. Sonnen told the examining nurse that he had "gas," which she declined to record on the Medical Application. Plaintiff's Response Facts, ¶ 9.

E. July 19, 2002, Gastroenterologist Questionnaire and July 23, 2002, Call to Dr. Magsarili

Three days later on July 19, 2002, Mr. Sonnen filled out and signed a questionnaire for gastroenterologist, Michael Chang, in which he identified the following as symptoms he was "currently experiencing": abdominal pain, nausea or vomiting, belching, recent weight change, fever, fatigue, joint pain or swelling, back pain, muscle pain, and heartburn. Defendant's Facts, ¶ 10. Plaintiff asserts that Mr. Sonnen believed the symptoms were due to gas and side effects from the cholesterol medication he had taken. Plaintiff's Response Facts, ¶ 10.

On July 23, plaintiff called Dr. Magsarili's office. The record of that call from Mr. Sonnen's medical records indicates that plaintiff reported that Mr. Sonnen could not get in to see the gastroenterologist until the end of August, that he was in "great pain" and that she had "noticed a drastic change in him." Pierson Dec., Ex. A, p. 11.

F. The Amendment

AmerUs reviewed the Application and Medical Applications (together "the Applications") and other materials. Because some blood test results were outside normal limits, it issued a policy on a "Table 2 rated" basis, meaning that the cost of insurance would be higher. Defendant's Facts, ¶ 12. Plaintiff testified that she understood that the rating

increased the premium. Pierson Reply Dec.[4], Ex. A, p. 136:20-137:2. In late July 2002, AmerUs issued the rated policy and mailed it to Mr. Perry's general agent. It included an Amendment to Life Insurance Application ("Amendment"), a copy of which had to be signed by the proposed insured and owner, accepting the higher cost of the "rated" policy and affirming that the proposed insured's health was as represented before. Copies of the Application, Medical Application and Amendment were bound together as part of the policy when it was mailed to Mr. Perry's general agent on July 31, 2002. Defendant's Facts, ¶ 12.

That same date, AmerUs mailed an endorsement to Mr. Sonnen's home address with a cover letter thanking him for purchasing a policy. Plaintiff's Response Facts, ¶ 12; Defendant's Reply Facts, ¶ 12.

G. Gastroenterologist Visit is Scheduled Sooner

Also on July 31, 2002, plaintiff called Dr. Magsarili. The record of that call contained in Mr. Sonnen's medical records indicates that plaintiff reported that Mr. Sonnen "is getting worse, in a lot of pain. . .is running fevers every day. . .wants to see the [gastroenterologist] sooner" and "works only half a day then needs to come home." Pierson Dec., Ex.A, p. 11-12. Dr. Magsarili's office called Mr. Sonnen to report that the appointment with the gastroenterologist was moved from the end of August to August 9, 2002, and Mr. Sonnen reported that he was having nausea eight to ten times per day, was in pain and the medications had not helped. Id., p. 12. The parties dispute whether Mr. Sonnen could be described as "healthy and vigorous" during this period. Plaintiff's Response Facts, ¶ 13; Defendant's Reply Facts, ¶ 13.

H. The Sonnens Challenge the Amendment

In early August, Mr. Perry told the Sonnens that AmerUs had issued a rated policy, increasing the cost. The parties agree that this was the first time that Mr. Perry had discussed AmerUs' rating system with the Sonnens. The Sonnens decided to seek doctors' letters to

---

[4] "Pierson Reply Dec." refers to the Declaration of Michael Pierson signed on June 28, 2004, and filed in support of defendant's Summary Judgment Reply Memorandum.

obtain a non-rated policy. Defendant's Facts, ¶ 14. Plaintiff's Facts, ¶ 14, Defendant's Reply Facts, ¶ 14. Perry Dec., Ex. F, p. 91; Pierson Response Dec.,[5] Ex. C, pp. 76:12-77:20. Citing the July 28, 2002, date on the cover page of the Application, plaintiff maintains that, at this point, the policy had already gone into effect. See, Dawson Response Aff., Ex. 13, p. 1. Nonetheless, on August 19, 2002, at the Sonnens' request, Dr. Magsarili wrote a letter "to whom it may concern" presenting reasons why Mr. Sonnen's blood tests showed "high GGT" and asking that his assignment to a high risk category, *i.e.*, Table 2, be reconsidered. Dawson Response Aff., Ex. 24.

I. The Cancer is Diagnosed

On August 9, 2002, Mr. Sonnen saw the gastroenterologist. He told the specialist that he had been having abdominal pain for more than a year. Defendant's Facts, ¶ 15. Plaintiff testified that she knew the purpose of the doctor's visit was to discuss the possibility of a colonoscopy. Pierson Dec., Ex. C, pp. 64-65. The specialist scheduled Mr. Sonnen for a colonoscopy and endoscopy on August 21, 2002. On August 22 or 23, 2002, Mr. Sonnen learned that he had colon cancer and was predicted to live for no more than six months. Pierson Dec., Ex. C, pp. 95:18-96:15, 98:12-16; Plaintiff's Response Facts, ¶ 15.

J. Mr. Sonnen Receives and Alters the Amendment

On August 23, 2002, after talking to his doctor, Mr. Sonnen called Mr. Perry about the insurance policy. That same day, Mr. Perry delivered the policy including the Application, Medical Application and Amendment, and Mr. Sonnen signed a Policy Delivery Receipt acknowledging that coverage did "not begin until the policy is delivered," and "commencement of coverage [was] subject to all the terms and conditions in the policy." Defendant's Facts, ¶ 16.

Mr. Perry knew that Mr. Sonnen had cancer at the time he delivered the policy. He called his general agent, Wayne Anderson before delivering the policy. Mr. Anderson told

---

[5] "Pierson Response Dec." refers to the Declaration of Michael Pierson signed on June 14, 2004, and filed in opposition to plaintiff's motion for summary judgment.

Page -9- OPINION AND ORDER *{ khh }*

him that he would call AmerUs, which asked that the policy not be delivered. Mr. Anderson did not reach Mr. Perry with that information before he gave the policy including the Amendment to the Sonnens. Mr. Anderson, Mr. Perry's general agent, does not have authority to waive AmerUs' delivery requirements or modify policy terms. Anderson Dec., ¶¶ 1-3. Plaintiff maintains that Mr. Sonnen learned that there was a delivery receipt for him to sign the first time on August 23, 2002. Plaintiff's Response Facts, ¶ 16.

On August 23, 2002, Mr. Sonnen signed and returned the Amendment, but not without altering it. The Amendment stated that it amended the original Application and would "become part of any policy issued from the original application and amendment" and that it would "be included in the policy applied for, and shall be binding on any person who claims an interest in the policy." Pierson Dec., Ex. B, p. 1. There were three representations in the amendment:

> "Since the date of the original application or any medical examination, if later, any proposed insured has not
>
> 1) had any illness or injury of any kind.
>
> 2) consulted, been examined or treated by any physician, clinic, or medical practitioner.
>
> 3) been declined insurance or offered a policy on a different basis than the one applied for."

Mr. Sonnen crossed out and initialed the second representation, but left the first intact. Id. Mr. Sonnen spoke with his daughter, an attorney, Regan Molatore, before signing the Amendment. She called AmerUs and spoke to someone in customer service and told her that her father had been to see a doctor and what should he do. Ms. Molatore testified:

> "The woman said: Oh well, you know, if he's been to the doctor, then just cross that out. And then she said, and then write on there the doctor he saw, the date he went, and any medications that were prescribed."

Pierson Reply Dec., Ex. G, p. 12. Ms. Molatore testified that she did not inform the customer service representative that Mr. Sonnen had cancer because "nobody asked" and because she did not think it was relevant. Id., pp. 13, 14.

Plaintiff maintains, and defendant accepts, that the Sonnens first learned of the Amendment on August 23, 2002. Plaintiff's Response Facts, ¶ 17; Defendant's Reply Facts, ¶ 17.

K. <u>AmerUs Rescinds the Table 2 Rated Policy</u>

On August 30, 2002, AmerUs wrote Mr. Sonnen that it was unable to offer him the Table 2 rated policy because the additional information submitted with the altered Amendment did not satisfy the offer of a Table 2 rating. Doss Dec., Ex. C, p. 1. Furthermore, AmerUs could not offer him any policy in light of the additional information provided with the Amendment. Id. AmerUs returned the $20,000 premium paid by P&C. Id., p. 2.

AmerUs maintains that it relied on the Applications and other materials submitted by Mr. Sonnen and that it would not have even offered a Table 2 rated policy if he had disclosed that he was continuing to seek medical help because he had unresolved stomach problems or that he had been referred to a gastroenterologist in July 2002. Defendant's Facts, ¶ 19. Plaintiff maintains that Mr. Sonnen's stomach problems did not constitute a stomach "disease or disorder" and that the medical help he sought did not constitute "diagnostic tests or treatment," and consequently, he made no misrepresentations in the Applications and Amendment. Mr, Sonnen also maintains that his symptoms were completely attributable to gastritis, which is not serious, rather than cancer with which he was diagnosed. Plaintiff's Response Facts, ¶ 19.

## DISCUSSION

AmerUs argues that no contract of insurance was ever formed because no agreement was ever reached on its material terms, because there was a failure of a condition precedent and because the Application and Medical Application contained material misrepresentations, omissions, concealments of fact and incorrect statements on which AmerUs relied. Plaintiff maintains that because the Application was submitted, the contract went into effect on the date specified on the Application, July 28, 2002. Plaintiff also asserts that AmerUs has

waived its ability, or is estopped, to deny coverage

A. <u>Was a Contract of Insurance Formed?</u>

Plaintiff maintains that once the Application was submitted, the policy was to become effective on the date specified on the application, July 28, 2002. AmerUs on the other hand characterizes the Amendment as a counteroffer that it made in response to Mr. Sonnen's offer consisting of the Application and Medical Application.

Precedent favors defendant: "As a general proposition, a contract of insurance is usually effected when an offer, in the form of an application for insurance by the insured is accepted by the insurance company." <u>Krause v. Washington Nat'l Ins. Co.</u>, 255 Or. 446, 456 (1970). In this case, the offer was not accepted by AmerUs; rather, it countered with an Amendment for Mr. Sonnen to consider.

Plaintiff asserts that Mr. Sonnen was never required to sign the Amendment for the insurance to become effective because the Application did not disclose that signing an Amendment would be necessary for the policy to become effective on July 28, 2002. See Plaintiff's Response, p. 11-12. This is consistent with plaintiff's position that all Mr. Sonnen had to do was submit the Application to bind AmerUs to issuing the policy. That, however, is not a reasonable expectation under the circumstances. The Application was a communication from Mr. Sonnen requesting insurance. By requesting a policy, Mr. Sonnen did not unilaterally bind AmerUs to issuing one.

The Sonnens' actions were consistent with that understanding. For example, Mr. Sonnen provided information in a telephone interview, medical exam and Medical Application after signing the Application. If the Application completed the contract, there would be no expectation on Mr. Sonnen's part that it would be necessary to provide any additional information to defendant because, under plaintiff's theory, AmerUs would have no choice but to issue the policy once it received the Application. Furthermore, in August the Sonnens attempted to have the Table 2 rating removed. That action on their part would be inconsistent with a belief that the policy was already issued and effective on July 28,

2002.

The Application did not, as a matter of law, create a contract of insurance. Rather it began a process of negotiation between the parties. Because Mr. Sonnen did not accept the Amendment as offered, *i.e.*, he deleted a representation and submitted information about additional medical treatment, AmerUs argues that its offer was never accepted and no contract was formed.

Defendant also argues that no contract of insurance was formed because there was no meeting of the minds in regard to the premium. Plaintiff maintains that when the $20,000 was submitted with the Application, the first premium was paid and AmerUs was bound. However, as explained above, the Application and Medical Application from Mr. Sonnen was an offer, which was met with a counteroffer from defendant, specifically a Table 2 rated policy. Plaintiff testified that she knew the Table 2 rated policy would cost more, but that amount was not determined. Consequently, agreement was never reached between the parties regarding the amount of the premium.

Once again, precedent favors defendant:

> "An offer must be certain so that, when an unqualified acceptance occurs, there will be a meeting of the minds as to the obligations that each assumes under the contract. In order to have a valid contract of insurance, the amount of the premium must be agreed on, expressly or impliedly."

Simmons v. All American Life Ins. Co., 115 Or. App. 409, 412-13 (1992), rev. denied, 315 Or 312 (1993). Simmons held that "[u]ntil decedent was aware of the amount and had agreed to pay it, he could not have entered into an enforceable agreement to purchase the . . . insurance policy." Id. at 413.

Likewise, in the present case, there was no meeting of the minds on the premium amount. Mr. Sonnen offered the Applications and an annual premium of $10,000, and AmerUs counteroffered with a Table 2 rated policy that plaintiff testified she knew would cost more.

In these circumstances, there is no dispute of material fact: AmerUs'

counteroffer—the Amendment—was not accepted by Mr. Sonnen, and there was no agreement as to the annual premium amount. Consequently, no binding contract of insurance was formed.

B.  <u>Was there a Failure of a Condition Precedent?</u>

AmerUs asserts that no contract was formed for the additional reason that there was a failure of a condition precedent, specifically, the requirement that the previous answers and statements in the Application and Medical Application remain "compete and true" at the time of delivery of the policy.

AmerUs first argues that the Application, Medical Application and Amendment were all part of the policy.  ORS 742.016(1) provides, in relevant part:

> "When the contract is made pursuant to a written application therefor, if the insurer delivers a copy of such application with the policy to the insured, thereupon such application shall become a part of the insurance policy."

Consistent with that statute, in the present case, "the policy, including any attached riders, endorsements or amendments, the attached copy of the application and any supplemental applications constitute the entire contract."  Likewise, the Application provided that "[i]t is agreed that the policy and copy of the application(s) in the policy constitute the entire contract," and the Medical Application provides "I agree that a copy of this application shall be a part of the policy."  Finally, the Amendment also specified that it was part of the policy:

> "The owner(s) agrees that the change indicated below shall be an Amendment to the original application and amendment.  A copy of this amendment shall be included in the policy applied for, and shall be binding on any person who claims an interest in the policy."

Thus, the Application, Medical Application and Amendment were all part of the policy.

The condition precedent, which AmerUs asserts was not satisfied, is contained in the Application:

> "the policy will take effect and coverage begin on the issue date specified in the policy [i.e., July 28, 2002) <u>if</u> the first premium is paid, the Proposed insured(s) are living and the answers and statements in the application(s) continue to be complete and true at the time of delivery of the policy."

Page -14- OPINION AND ORDER                                                                                           *{ khh }*

Defendant argues that the answers were not complete and true at the time the policy was delivered because it was not disclosed that Mr. Sonnen: (1) had ongoing stomach problems; (2) was under observation and treatment; (3) had had symptoms of or been treated for a disorder of the stomach within the last ten years; and (4) had been advised to have a diagnostic test or treatment not yet completed, *i.e.*, the colonoscopy. AmerUs asserts that the statements in the Applications were not complete and true when the policy was received by Mr. Sonnen, on August 23, 2002, because, by that date, he had consulted with doctors and been diagnosed with terminal cancer.

AmerUs further asserts that the answers on the Applications were not complete and true at the time of the July 28, 2002, "effective date" because by then Mr. Sonnen had reported and sought medical treatment for abdominal pain and had been referred to a gastroenterologist.

In the Application Mr. Sonnen had reported that he had last seen a doctor six months ago and had no trouble since, and had not been seen within the last ten years for symptoms of any stomach or digestive disorder. In the Medical Application he reported that he had last seen a doctor in January 2002 and had not otherwise seen a doctor. Thus, in light of the calls and visit to Dr. Magsarili and the referral to a gastroenterologist, the answers in the Application and Medical Application, would not have been true on the July 28, 2002, "effective date." Furthermore, in light of the appointment with the gastroenterologist and cancer diagnosis, the answers in the Application and Medical Application would not have been true on August 23, 2002, when Mr. Sonnen received and altered the Amendment.

Plaintiff, however, argues that there were no conditions precedent. Nonetheless, as quoted above, there were three conditions precedent listed in the Application, which became part of the policy: (1) that the first premium be paid; (2) that the insured be living ; and (3) that the answers in the Applications continue to be complete and true at the time the policy is delivered.

"By the terms of the insurance contract . . . it may be, and often is,

provided that the insurance policy shall not become effective until the first premium has been paid or until the policy is delivered to the insured. When such provisions are included in the insurance contract as conditions precedent they are held to be effective in accordance with their terms. . . . [N]o contractual duty arises under a policy until there has been compliance with the conditions precedent."

Krause, 468 P.2d 513, 517-18 (Or. 1970). Similarly, it is often provided as a condition precedent that the applicant's answers on the application remain the same at the time of delivery. See, e.g., Williams v. Metropolitan Life Ins., 10 Wash. App. 600 (1974), cited with approval in Olsen v. Federal Kemper Life Assurance Co., 299 Or. 169, 173 (1985). The fact that the conditions may not be satisfied until after a specified "effective date" (in this case July 28, 2002), does not result in any ambiguity. The policy does not become effective, regardless of the effective date, until the conditions precedent are satisfied. Olsen, 299 Or. at 175.

Plaintiff argues that AmerUs misinterprets the phrase that the answers "continue to be true" at the time the policy is delivered. Plaintiff asserts that the phrase means that the answers were true at the time they were given and thereafter. Plaintiff's Response, p. 14. While it is not clear how the interpretation advanced by plaintiff differs from that advanced by defendant, plaintiff does assert that the phrase cannot be interpreted to mean that the applicant's health must be the same at the time the policy is delivered as it was at the time the Application was filled out. Id. at 14-15. The interpretation advanced by AmerUs is that the answers and statements, if given at the time the policy was delivered, would still be true. Plaintiff either agrees with that or advances the interpretation that the answers must only have been true at the time the application was filled out. If plaintiff is advancing the latter interpretation, it must be rejected because that interpretation ignores some of the terms in the Application. If the statements and answers in the Application need only be true at the time they were first given, then there would be no need to include the terms "continue to" or "at the time the policy is delivered." Those terms must have been included to convey that a truthful status quo must be maintained, in regard to the statements and answers, until the

Page -16- OPINION AND ORDER *{ khh }*

policy is delivered.

In support of the argument that the answers were truthful, plaintiff relies on parts of Mr. Sonnen's medical records that would indicate that he was suffering from no more than excess gas or side effects from medication, which he discontinued in June 2002. Regardless of those portions of the record cited by plaintiff, *e.g.*, the testimony of lay witnesses Stanislowski, Moyer, and Marquart, the whole picture presented by the medical records did not indicate that it was unequivocally the case that Mr. Sonnen's problems were caused by gas or medication side effects, or that he reasonably believed that to be the case.

Citing Dr. Magsarili's deposition testimony, plaintiff argues that the referral to the gastroenterologist was "routine and intended to get the person–who may or may not use the referral–on the specialist's schedule because it was difficult to schedule such appointments." Plaintiff's Response Brief, p. 5:23-25. While the actual deposition testimony states that the referral was routine, and that it was difficult to schedule, it does not state that scheduling was prophylactic, as plaintiff suggests, *i.e.*, made in case plaintiff decided to use it or in case irritable bowel medication did not resolve the abdominal symptoms.

Moreover, regardless of the context, a referral was made that was not disclosed on the Applications. Furthermore, although plaintiff would like to characterize the referral as routine and prophylactic, the record establishes that, by July 31, 2002, the Sonnens had contacted Dr. Magsarili to report that his symptoms were worse and to request that the appointment with the gastroenterologist be moved to an earlier date. Thus, before the Amendment was delivered, the Sonnens believed that the referral was necessary and not merely prophylactic.

Regardless of whether the statements and answers continued to be true at the time the policy was delivered, there is a dispute whether the statements and answers were true at the time they were given. It is not necessary to reach defendant's argument that the policy is unenforceable because the Applications contained material misrepresentations, omissions, concealments of fact and incorrect statements. That is because there is no dispute of material

Page -17- OPINION AND ORDER *{ khh }*

fact that no binding contract of insurance was ever formed.

C.  <u>Is AmerUs Estopped to Deny Coverage?</u>

Plaintiff asserts that AmerUs is estopped from denying coverage or, through its actions, has waived its arguments for doing so: (1) by accepting P&C's premium payment of $20,000 and related acts prior to returning that payment; (2) by sending the Sonnens a letter dated July 31, 2002, thanking them for purchasing the policy and stating an "effective date" of July 28, 2002; and (3) on any basis other than those set forth in its letter of August 30, 2002, in which it rescinded its offer of a Table 2 rated policy.

Plaintiff claims that AmerUs waived its ability to deny coverage when it accepted the $20,000 P&C paid on July 9, 2002, by depositing those funds into its miscellaneous suspense account on July 12, 2002, and transferring those funds into a premium suspense account on July 30, 2002. See Plaintiff's Response, pp. 18-19. Plaintiff has produced internal documents from AmerUs that specify, "When the policy is put in force, the payment is taken from miscellaneous suspense and transferred to premium suspense." Dawson Response Aff., Ex. 15, p. 2.

The premium payment was returned to P&C approximately fifty days after it was paid. Citing <u>Moford v. California Western States Life Ins.</u>, AmerUs argues that it's retention of the payment for that time period did not create a contract, through estoppel or waiver:

> "[A]s a general rule, if the insurer replies to the application by proposing different terms, or by sending a policy differing in the essential terms from that applied for, no contract is made until the counter proposition or policy has been accepted by the applicant, even though the insurer retains the premium pending action by the insured. In such a case, there is no contract, as the minds of the parties never met upon the terms."

166 Or. 575, 589 (1941). AmerUs has also offered the declaration of James F. Veatch, the Director of New Business Development for AmerUs that when the funds are moved from the miscellaneous expense account to the premium expense account, policy documents are sent out for delivery and there remain outstanding delivery requirements—including in this case, that the Amendment be accepted and returned. If that does not happen, the payment is

returned, as it was in this case. Veatch Dec., ¶ 2.

Plaintiff asserts that certain payments were made to agents and that interest accrued on the premium amount. The documents supporting that assertion are internal documents from AmerUs, the meaning of which is not readily apparent without expert testimony. See, *e.g.*, Dawson Aff.,[6] Exs. 13, 22. Nonetheless, assuming the truth of plaintiff's assertions, that does not provide a basis to enforce a contract of insurance under these circumstances. The premium was retained for fifty days, not an excessive amount of time, and was promptly returned once it was determined that even a Table 2 rated policy could not be offered. Moreover, even if payments were made to agents based on the activity between AmerUs and the Sonnens, it is undisputed that the entire $20,000 was returned to P&C.

Plaintiff also asserts that a letter sent by AmerUs, dated July 31, 2002, enclosing an endorsement and thanking them for purchasing a policy bars AmerUs from asserting that no binding contract was formed. The letter stated that the endorsement should be "place[d] with your policy" making it clear that the endorsement in itself, was not the policy. Under the circumstances here, the elements of estoppel have not been met. To prevail on a claim of estoppel, plaintiff bears the burden of proving he following:

> "There must be (1) a false representation; (2) it must be made with knowledge of the facts; (3) the other party must have been ignorant of the truth; (4) it must have been made with the intention that it should be acted upon by the other party; and (5) the other party must have been induced to act upon it."

Day v. Advanced M&D Sales, 336 Or. 511, 518-19 (2004) (citations omitted). The actions of the Sonnens after receiving the July 31 letter belie that there was any justifiable reliance on their part. For example, in early August, Mr. Sonnen asked Dr. Magsarili for his help because he was "trying to get insurance." Pierson Response Dec., Ex. c, p. 80:10-18. This is consistent with plaintiff's testimony about a note she wrote at that time to Dr. Magsarili's office that they were "trying to get insurance." Pierson Dec., Ex. C, pp. 7-8, 23.

---

[6] "Dawson Aff." refers to the affidavit of Bryan W. Dawson, signed on May 28, 2004, and filed in support of plaintiff's motion for summary judgment.

In general, estoppel "cannot be the basis for creating an original grant of coverage where no such contract previously existed." Wyoming Sawmills, Inc. v. Transportation Ins. Co., 282 Or 401, 410 (1978). As explained above, no binding contact was ever formed because there was no meeting of the minds on material terms such as the annual premium and failure of a condition precedent. Plaintiff, however, asserts that she only seeks to estop AmerUs from asserting other bases for denial besides those stated in its letter of August 30, 2002, which informed the Sonnens that even a Table 2 rated policy could not be offered. This assertion is more pertinent to plaintiff's waiver argument, *i.e.*, that AmerUs waived its misrepresentation defense because it was not mentioned in the August 30 letter. However, as explained above, it is not necessary to reach AmerUs misrepresentation defense. Thus, it is not necessary to reach plaintiff's argument that that defense was waived.

Defendant is entitled to summary judgment on the ground that no binding contract of insurance was formed, and defendant is not estopped to deny the existence of a binding contract.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment (docket No. 43) is denied and defendant's motion for summary judgment (docket No. 48) is granted.

DATED this 15th day of April, 2005.

       /s/Donald C. Ashmanskas
       DONALD C. ASHMANSKAS
       United States Magistrate Judge